Salvatore Graziano (admitted *pro hac vice*)
Hannah Ross (admitted *pro hac vice*)
Adam Wierzbowski (admitted *pro hac vice*)
Abe Alexander (admitted *pro hac vice*)
**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
salvatore@blbglaw.com
hannah@blbglaw.com
adam@blbglaw.com
abe.alexander@blbglaw.com

*Counsel for Lead Plaintiff Los Angeles Fire
and Police Pensions and Lead Counsel for
the Class*

[Additional counsel on signature pages]

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH
### CENTRAL DIVISION

| | |
|---|---|
| IN RE MYRIAD GENETICS, INC. SECURITIES LITIGATION | Case No. 2:19-cv-00707-JNP-DBP <br><br> **LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND AUTHORIZATION TO PROVIDE NOTICE OF SETTLEMENT, AND MEMORANDUM OF LAW IN SUPPORT THEREOF** <br><br> District Judge Jill N. Parrish |

## **TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................. 1

II.     RELEVANT BACKGROUND ............................................................................. 5

        A.      The Commencement And Nature Of The Action .................................... 5

        B.      Fact And Expert Discovery ..................................................................... 7

        C.      Class Certification, Notice, And The Opt-Out Opportunity .................. 8

        D.      The Mediation/Settlement Process ......................................................... 9

        E.      Terms Of The Settlement ...................................................................... 10

III.    ARGUMENT ...................................................................................................... 11

        A.      Los Angeles And Lead Counsel Adequately Represented The Class ................. 13

        B.      The Settlement Was Reached Through Arm's-Length Negotiations ................... 14

        C.      The Settlement's Terms Are Adequate And Equitable .......................... 17

                1.      The Settlement Provides Substantial Relief, Especially In Light Of The Costs, Risks, And Delay Of Further Litigation ............................... 17

                2.      Other Factors Established By Rule 23(e)(2)(C) Support Approval .......... 21

        D.      The Settlement Treats Class Members Equitably Relative to Each Other .......... 23

IV.     THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE CLASS .......................................... 24

        A.      Proposed Notice Procedures .................................................................. 24

        B.      The Court Should Not Require A Second Opt-Out Period ..................... 26

V.      PROPOSED SCHEDULE OF SETTLEMENT EVENTS .................................. 28

VI.     CONCLUSION ................................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Home Assurance Co. v. Cessna Aircraft Co.*,
  551 F.2d 804 (10th Cir. 1977) ...................................................................................11

*Big O Tires, Inc. v. Bigfoot 4x4, Inc.*,
  167 F. Supp. 2d 1216 (D. Colo. 2001).......................................................................11

*Cotte v. CVI SGP Acquisition Trust*,
  2023 WL 1472428 (D. Utah Feb. 2, 2023) ................................................................13

*In re Crocs, Inc. Sec. Litig.*,
  2013 WL 4547404 (D. Colo. Aug. 28, 2013) .............................................................12

*In re Crocs, Inc. Sec. Litig.*,
  306 F.R.D. 672 (D. Colo. 2014) .................................................................................15

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006)........................................................................................27

*In re Genworth Fin. Sec. Litig.*,
  210 F. Supp. 3d 837 (E.D. Va. 2016) .........................................................................15

*In re Giant Interactive Grp., Inc.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ................................................................................20

*Gradie v. C.R England, Inc.*,
  2020 WL 6827783 (D. Utah Nov. 20, 2020) ..............................................................15

*Hampton v. Aqua Metals, Inc.*,
  2021 WL 4553578 (N.D. Cal. Oct. 5, 2021)...............................................................21

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  2016 WL 7625708 (S.D.N.Y. Dec. 21, 2016) ............................................................15

*Low v. Trump Univ., LLC*,
  246 F. Supp. 3d 1295 (S.D. Cal. 2017),
  *aff'd*, 881 F.3d 1111 (9th Cir. 2018)..........................................................................27

*Low v. Trump Univ., LLC*,
  881 F.3d 1111 (9th Cir. 2018) ....................................................................................27

*Lucas v. Kmart Corp.*,
  234 F.R.D. 688 (D. Colo. 2006) ......................................................................12, 17

*Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*,
  2010 WL 5387559 (D. Colo. Dec. 22, 2010)............................................................22

*Martinez v. Reams*,
  2020 WL 7319081 (D. Colo. Dec. 11, 2020)............................................................14

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
  2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)................................................................21

*In re Mills Corp. Sec. Litig.*,
  265 F.R.D. 246 (E.D. Va. 2009) ..............................................................................14

*In re Molycorp, Inc. Sec. Litig.*,
  2017 WL 4333997 (D. Colo. Feb. 15, 2017) ............................................................15

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ..............................................................................16

*In Re Nu Skin Enterprises, Inc., Sec. Litig.*,
  2016 WL 6916485 (D. Utah May 24, 2016)..............................................................25

*In Re Nu Skin Enterprises, Inc., Sec. Litig.*,
  Case No. 2:14-cv-00033-JNP-BCW (D. Utah May 20, 2016), ECF No. 134-1......................22

*O'Dowd v. Anthem, Inc.*,
  2019 WL 4279123 (D. Colo. Sept. 9, 2019)........................................................12, 16

*Officers for Justice v. Civ. Serv. Comm'n of the City & Cty of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ....................................................................................27

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
  314 F.3d 1180 (10th Cir. 2002) ................................................................................13

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2020 WL 4196468 (S.D.N.Y. July 21, 2020) ...........................................................24

*Silverman v. Myriad Genetics, Inc., et al.*,
  Case No. 2:19-cv-00707-PMW .................................................................................5

*In re Thornburg Mortg., Inc.*,
  912 F. Supp. 2d 1178 (D.N.M. 2012)........................................................................22

*Tuten v. United Airlines, Inc.*,
    41 F. Supp.3d 1003 (D. Colo. 2014)......................................................................................11

*In re Veeco Instruments Inc. Sec. Litig.*,
    2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ..........................................................................16

*In re Vivint Solar, Inc. Sec. Litig.*,
    Case No. 2:20-cv-919 (JNP)(CMR) (D. Utah Nov. 10, 2021), ECF No. 87-2......................22

*In re WorldCom, Inc. Sec. Litig.*,
    2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004) ........................................................................14

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)....................................................................................27

STATUTES

15 U.S.C. § 78u-4 .....................................................................................................................24, 25

OTHER AUTHORITIES

Fed. R. Civ. P. 23(e) ............................................................................................................ passim

Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2022*
    *Review and Analysis*, fig. 5 (Cornerstone Research 2023) ....................................................20

Court-appointed Lead Plaintiff and Class Representative Los Angeles Fire and Police Pensions ("Los Angeles") respectfully moves this Court, and submits this Memorandum of Law in support of its Motion, pursuant to Rule 23(e)(1) of the Federal Rules of Civil Procedure, for preliminary approval of the proposed Settlement set forth in the Parties' Stipulation and Agreement of Settlement dated August 3, 2023 (the "Stipulation").[1]

## I.    INTRODUCTION

Los Angeles is pleased to report that, after nearly four years of hard-fought litigation, it has negotiated an agreement to settle this securities class action in exchange for a total settlement value of $77,500,000 consisting of cash and Myriad common stock. If the Settlement is approved by the Court, it will result in a highly significant payment to Class Members and will resolve this class action in its entirety. Pursuant to Rule 23(e)(1) of the Federal Rules of Civil Procedure, Los Angeles now moves for *preliminary* approval so that notice of the Settlement can be disseminated to Class Members and a hearing on *final* approval can be scheduled. This Motion is unopposed, and all Parties agree that it may be decided on the papers, subject to the Court's approval.

The Settlement, which is described in more detail in the Stipulation and below, is the largest securities class action recovery ever achieved in Utah and ranks among the top ten such recoveries in Tenth Circuit history. It requires Myriad to pay $77,500,000 million in total settlement value, with at least $20,000,000 paid in cash and the remainder paid in either additional cash or shares of freely-tradeable Myriad common stock. The Settlement provides a highly significant, near-term recovery to Class Members.

---

[1] All capitalized terms not otherwise defined shall have the meanings given to them in the Stipulation, which is attached as Exhibit 1 to this Motion.

The Settlement is the product of extensive arms'-length negotiations supervised by two experienced mediators: former District Court Judge Layn R. Phillips, who is one of the preeminent mediators of complex securities class actions in the nation, and Michelle Yoshida, who likewise has significant experience mediating large securities class action cases. The mediation process included the exchange of multiple detailed mediation statements, confidential financial information, and a full-day mediation session before Judge Phillips and Ms. Yoshida, followed by continued discussions between the Parties with the assistance and oversight of the mediators. The Settlement was ultimately based on a joint mediators' recommendation by both Judge Phillips and Ms. Yoshida, which the Parties accepted on a "double-blind" basis.

Throughout this Action, Los Angeles, Lead Counsel, and the Los Angeles City Attorney zealously represented Class Members' interests and, through their extensive litigation efforts, gained a thorough understanding of the strengths and weaknesses of the case. Indeed, prior to reaching the Settlement, Los Angeles had conducted an extensive investigation, including interviews of multiple former Myriad employees and the filing of a detailed amended complaint. Los Angeles litigated Defendants' motion to dismiss the complaint, as well as a contested class certification motion. Los Angeles also completed extensive fact discovery, which included contested discovery motions, the analysis of over 1.7 million pages of documents, and the depositions of 22 fact witnesses, including Myriad's top executives, senior scientists, and key third-parties. Expert discovery was ongoing at the time of settlement and Los Angeles had obtained, and was prepared to serve, reports authored by five prominent experts in the fields of psychiatry, pharmacogenomics, statistics, financial economics, and accounting—reports that were the product of Los Angeles's detailed consultation with those experts throughout the course

of the litigation. As a result, Los Angeles and Lead Counsel had a thorough and well-developed understanding of the merits and risks of the claims when they agreed to the Settlement.

The very significant benefit the proposed Settlement will provide to the Class is particularly meaningful when considered against the substantial risk that the Class might recover less (or even nothing) if the Action were litigated through further dispositive motions, trial, and any appeals that would likely follow—a process that could last years. There were many material risks attendant to continued litigation. As discussed in more detail below, the subject matter of this case was technical, complex, and involved scientific judgment, creating potential hurdles to proving the elements of falsity and scienter required to prove a securities fraud claim. Also, Los Angeles faced risks in establishing "loss causation," which requires Los Angeles to link the alleged fraud to the stock price declines at issue. In addition, given that Myriad has operated at a combined loss of over $700 million over the past four years, reporting either negative operating cash flow or a net loss in every quarter during that period, there was a substantial risk that even if Los Angeles was successful in establishing liability at trial (and after appeals from any verdict), Myriad would have been forced into bankruptcy rather than be able to pay a judgment. Considering these and numerous other risks, as well as the costs and delays of further litigation, Los Angeles and Lead Counsel believe the $77,500,000 recovery is an extremely favorable result for the Class.

Los Angeles respectfully requests that this Court enter the proposed Preliminary Approval Order attached as Exhibit A to the Stipulation and as Exhibit 2 to this Motion. The Preliminary Approval Order, among other things: (i) schedules a final hearing to consider the fairness, reasonableness, and adequacy of the Settlement, the proposed Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses (the "Settlement Hearing"); (ii) preliminarily

approves the Settlement as fair, reasonable, and adequate to the Class, pending the final hearing; (iii) approves the form and method of disseminating notice of the Settlement to the Class; and (iv) establishes procedures and deadlines for Class Members to submit Claim Forms for payments from the Net Settlement Fund and object to the Settlement, Plan of Allocation, and/or requested fees and expenses.

Los Angeles (with Defendants' consent) respectfully proposes a schedule for proceeding with final approval of the Settlement that is the same (or close to) the schedule set forth below. This will promptly schedule the Settlement Hearing 100 days from the date of entry of the Preliminary Approval Order in order to accommodate the time required by the Class Act Fairness Act ("CAFA") to mail the CAFA notice and enter the judgment finally approving the Settlement. The proposed schedule provided below assumes that the Court enters the Preliminary Approval Order by August 10, 2023, and schedules the Settlement Hearing for November 20, 2023. Please note that the Court need only enter the date of the Settlement Hearing at ¶ 3 of the proposed Preliminary Approval Order, as all other dates/deadlines referenced below will be set based on either (a) the date of entry of the Preliminary Approval Order or (b) the date chosen by the Court for the Settlement Hearing.

| Event | Proposed Timing | Example Date |
|---|---|---|
| Deadline for mailing the Settlement Notice and Claim Form to Class Members (which date shall be the "Notice Date") | No later than 15 business days after entry of Preliminary Approval Order (Preliminary Approval Order ¶ 5(a)) | August 31, 2023 |
| Deadline for publishing the Summary Settlement Notice | No later than 10 business days after the Notice Date (Preliminary Approval Order ¶ 5(c)) | September 15, 2023 |

| Event | Proposed Timing | Example Date |
|---|---|---|
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's motion for attorneys' fees and expenses) | 35 calendar days before the date set for the Settlement Hearing (Preliminary Approval Order ¶ 25) | October 16, 2023 |
| Deadline for receipt of objections | 21 calendar days before the date set for the Settlement Hearing (Preliminary Approval Order ¶ 14) | October 30, 2023 |
| Deadline for filing reply papers | 7 calendar days before the Settlement Hearing (Preliminary Approval Order ¶ 25) | November 13, 2023 |
| Settlement Hearing | 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter (Preliminary Approval Order ¶ 3) | November 20, 2023 |
| Postmark deadline for submitting Claim Forms | 120 calendar days after the Notice Date (Preliminary Approval Order ¶ 9) | December 29, 2023 |

## II.     RELEVANT BACKGROUND

### A.     The Commencement And Nature Of The Action

This Action was commenced on September 27, 2019 with the filing of a class action complaint styled *Silverman v. Myriad Genetics, Inc., et al.*, Case No. 2:19-cv-00707-PMW in the District of Utah, alleging violations of the federal securities laws. ECF No. 2. On December 23, 2019, the Court appointed Los Angeles as Lead Plaintiff in the Action, approved Los Angeles's selection of Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") as Lead Counsel for the putative class, and consolidated all related actions. ECF No. 21.

On February 21, 2020, Los Angeles filed the Amended Class Action Complaint (ECF No. 34) (the "Complaint") alleging violations of Sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934 (the "Exchange Act"), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder, claiming that Defendants defrauded investors in Myriad common stock through their misrepresentations about two of Myriad's most significant products during the Class Period, a pharmacogenomic test called GeneSight and genetic tests for hereditary cancer. The Complaint alleged that Defendants made false and misleading statements concerning GeneSight's efficacy, including concerning: (1) the test's ability to predict patient response to medications used to treat Attention Deficit Disorder ("ADHD") and pain; (2) the results of a clinical study of the GeneSight product in patients with major depressive disorder, called the GUIDED study; (3) the Company's efforts to publish data from the GUIDED study; and (4) Myriad's interactions with the FDA concerning GeneSight. The Complaint also alleged that Defendants materially overstated Myriad's revenue attributable to its hereditary cancer tests. The Complaint further alleged that investors learned the truth about Defendants' misrepresentations through various corrective disclosures, including on August 13, 2019, when Myriad announced the withdrawal of components of GeneSight and that "the FDA [had] requested changes to the GeneSight test offering"; on November 4, 2019, when Myriad revealed that it had overstated revenue attributable to its hereditary cancer tests and announced further declines in GeneSight revenue; and on February 6, 2020, when Myriad announced the resignation of its CEO, Defendant Mark C. Capone, and that Myriad was experiencing challenges in obtaining payor reimbursement for GeneSight. The Complaint alleges that when the truth concealed by Defendants' misstatements was revealed, the price of Myriad common stock declined, injuring investors.

The Complaint further asserted claims under Section 20A of the Exchange Act for insider trading against Defendants Capone and Riggsbee. Specifically, the Complaint asserted that Defendants Capone and Riggsbee sold Myriad stock while in possession of material non-public information concerning GeneSight and the hereditary cancer tests, and that Los Angeles and members of the Class purchased Myriad stock contemporaneously with those sales.

On May 5, 2020, Defendants filed a motion to dismiss the Complaint (the "Motion to Dismiss"). ECF No. 51. On July 3, 2020, Los Angeles filed its memorandum of law in opposition to Defendants' Motion to Dismiss (ECF No. 57) and a motion to strike certain exhibits from the Motion to Dismiss and request for judicial notice (ECF No. 59) ("Motion to Strike"). On August 3, 2020, Defendants served their reply memorandum of law in further support of the Motion to Dismiss (ECF No. 67) and their opposition to Los Angeles's Motion to Strike (ECF No. 68). On August 17, 2020, Los Angeles filed its reply memorandum of law in further support of the Motion to Strike. ECF No. 70.

On March 16, 2021, the Court entered its Memorandum Decision and Order denying Defendants' Motion to Dismiss and granting in part and denying in part Los Angeles's Motion to Strike. ECF No. 73. On May 17, 2021, Defendants filed their Answer to the Complaint. ECF No. 79.

### B.      Fact And Expert Discovery

H.      Fact discovery commenced on March 16, 2021. Stipulation at 3. Pursuant to detailed document requests and substantial negotiations, Defendants and third parties produced nearly half a million documents, totaling more than 1.7 million pages, to Los Angeles. Los Angeles produced thousands of pages worth of documents to Defendants. *Id.* Los Angeles also served

subpoenas on and negotiated document discovery with 36 third parties, including the United States Food and Drug Administration. *Id.* In addition, Los Angeles deposed 22 fact witnesses, including Defendants Capone, Dechairo, and Riggsbee, other senior Company executives and scientists, and significant third-party witnesses, including the GUIDED trial's principal investigators. *Id.* In addition, Los Angeles's representative appeared for a full-day deposition noticed by Defendants. *Id.* The Parties also served and responded to interrogatories and requests for admission and exchanged numerous letters, including disputes between the Parties concerning discovery issues. *Id.* While the Parties were able to resolve many of those disputes, several were presented to the Court, and in certain instances the Court conducted hearings on those disputes. *Id.*

Pursuant to the Court-ordered schedule, the Parties were due to exchange opening expert reports on June 15, 2023. *Id.* at 5. Lead Plaintiff obtained, and was prepared to serve, reports authored by five prominent experts in the fields of psychiatry, pharmacogenomics, statistics, financial economics, and accounting. *Id.* Defendants also engaged several experts and were prepared to serve an opening report. *Id.*

### C. Class Certification, Notice, And The Opt-Out Opportunity

On June 7, 2021, while discovery was ongoing, Los Angeles filed its motion for class certification, which was fully briefed by October 5, 2021. ECF Nos. 82, 96, and 106. On December 13, 2021, the Court entered an Order granting Los Angeles's motion in full, certifying the Class, and appointing Los Angeles as Class Representative and BLB&G as Class Counsel. ECF No. 123. On February 14, 2022, the Court approved the Parties' proposed Class Notice, which provided Class Members with the opportunity to request exclusion from the Class and set forth the deadline and procedures for doing so. ECF No. 131. The Class Notice specifically informed Class Members

that they may not have another opportunity to opt-out and that, if they chose to remain in the Action, they would "be bound by any settlement or judgment in this Action," including "any unfavorable judgment which may be rendered in favor of Defendants." ECF No. 140-1. The Class Notice deadline for opting-out was May 16, 2022. Thirty opt-outs were received, all of which were submitted by individual (i.e., non-institutional) investors, and many of whom requested exclusion because they did not believe they were members of the Class. ECF Nos. 140-4, 140-5.

### D.    The Mediation/Settlement Process

The Parties retained *two* Mediators in this case: former U.S. District Court Judge Layn R. Phillips and Michelle Yoshida and participated in a full-day mediation session on May 1, 2023. Stipulation at 5. Judge Phillips is one of the nation's preeminent mediators and has significant experience mediating securities class actions. *Id.* Likewise, Ms. Yoshida has substantial experience mediating complex securities class actions. *Id.* In advance of the mediation session, the Parties submitted detailed opening and reply mediation statements to the Mediator, together with numerous supporting exhibits, which addressed both liability and damages issues. *Id.* Although the session ended without any agreement being reached, the Parties continued discussions with the Mediators following the session exploring the possibility of a settlement. *Id.*

After additional negotiations, on June 12, 2023, the Mediators issued a joint mediators' recommendation to settle the Action for $77,500,000 in total settlement value, with at least $20,000,000 paid in cash and the remainder paid in either additional cash or shares of freely-tradeable Myriad common stock. *Id.* at 5-6. On June 19, 2023, the Parties accepted the mediator's proposal on a "double blind" basis. *Id.* The Parties continued to negotiate the Term Sheet until July 3, 2023, when it was executed. *Id.* at 6. The Parties then negotiated the Stipulation, which reflects

the final and binding agreement between the Parties and supersedes the Term Sheet. The Stipulation was signed on August 3, 2023.

### E.    Terms Of The Settlement

The Stipulation provides that Myriad will pay or cause to be paid $77,500,000 (the "Settlement Amount"), with at least $20 million paid in cash and the remainder of the Settlement Amount paid in either additional cash or shares of freely-tradable Myriad common stock (the "Settlement Shares").[2] Stipulation ¶ 1(ww). Pursuant to the Stipulation, Myriad will cause at least $20 million in cash (the "Initial Cash Amount") to be deposited into an interest-bearing escrow account (the "Escrow Account") no later than ten business days after the date of the Court's entry of an order preliminarily approving the Settlement. *Id.* ¶ 8(a). Prior to the Settlement Hearing, Myriad is required to disclose to Lead Counsel what proportion of the remaining Settlement Amount will be paid in cash (the "Additional Cash Amount") or shares of Myriad common stock (the "Stock Component"), and Myriad will cause any Additional Cash Amount to be deposited into the Escrow Account no later than three calendar days after the date of the Court's entry of a judgment finally approving the Settlement. *Id.* ¶¶ 8(b)-(c). Also, pursuant to the Stipulation, the Settlement Shares will be issued and delivered to the Securities Brokerage Account established by Los Angeles no later than three business days after the date of entry of the judgment. *Id.* ¶ 8(e).[3]

---

[2] Pursuant to the terms of the Stipulation, the Settlement Shares may be issued in reliance upon the exemption from registration provided by Section 3(a)(10) of the Securities Act, based on this Court's approval of the Settlement.

[3] The number of Settlement Shares that Myriad shall issue will be calculated by dividing the Stock Component by the Volume-Weighted Average Price ("VWAP") of Myriad common stock for the ten consecutive trading days immediately preceding the date of the Settlement Hearing. *See* Stipulation ¶ 8(d).

Subject to the terms of the Stipulation, upon receipt of the Settlement Shares into the Securities

Brokerage Account, Lead Counsel intends to liquidate all of the Settlement Shares and distribute

the net cash proceeds from the sale of the shares to Authorized Claimants.

The Settlement Amount, plus accrued interest, after the deduction of attorneys' fees and

Litigation Expenses awarded by the Court, Taxes, Notice and Administration Costs, and any other

costs or fees approved by the Court (the "Net Settlement Fund"), will be distributed among

Authorized Claimants in accordance with a plan of allocation to be approved by the Court. *Id.* ¶ 11.

If the Settlement receives the Court's final approval, Class Members will release the

"Released Plaintiff's Claims" in exchange for the Settlement Amount. *See* Stipulation ¶ 1(rr). The

release's scope is reasonable as it is limited to claims related to *both* the purchase, acquisition, or

trading of Myriad common stock during the Class Period *and* to the factual allegations set forth in

the complaints filed in the Action. *Id*. Further, the proposed Settlement does not release claims

asserted in any ERISA or derivative actions. *Id.*

## III.   ARGUMENT

The Tenth Circuit has recognized that "[t]he inveterate policy of the law is to encourage,

promote, and sustain the compromise and settlement of disputed claims.'" *Am. Home Assurance

Co. v. Cessna Aircraft Co.*, 551 F.2d 804, 808 (10th Cir. 1977); *see also Big O Tires, Inc. v. Bigfoot

4x4, Inc.*, 167 F. Supp. 2d 1216, 1229 (D. Colo. 2001) ("As a matter of public policy, the law

favors and encourages settlements[;] [t]he settlement of actions should be fostered to avoid

protracted, wasteful and expensive litigation."). This policy has even more force in complex class

actions such as this one, "where substantial judicial resources can be conserved by avoiding formal

litigation." *Tuten v. United Airlines, Inc.*, 41 F. Supp.3d 1003, 1007 (D. Colo. 2014); *see also*

*O'Dowd v. Anthem, Inc.*, 2019 WL 4279123, at *12 (D. Colo. Sept. 9, 2019) ("The presumption in favor of voluntary settlement agreements is especially strong in class actions.") (internal quotations omitted).

Under Federal Rule of Civil Procedure 23(e), Court approval of a proposed class action settlement is a well-established, two-step process. *First*, the Court determines whether to grant preliminary approval of the Settlement and allow notice of the Settlement to be disseminated to class members. *See* Fed. R. Civ. P. 23(e)(1). *Second*, following notice, the Court determines whether to approve the Settlement at a final approval hearing. *See* Fed. R. Civ. P. 23(e)(2).

At this preliminary stage, in contrast to the final approval stage, the Court's task is simply "to determine whether there is any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006); *see also In re Crocs, Inc. Sec. Litig.*, 2013 WL 4547404, at *3 (D. Colo. Aug. 28, 2013) ("Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is . . . 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness.").

The Federal Rules of Civil Procedure provide that a court should grant preliminary approval based on a finding that it "will likely be able" to (i) finally approve the Settlement under Rule 23(e)(2), and (ii) certify the class for purposes of the settlement. *See* Fed. R. Civ. P. 23(e)(1)(B). Here, the Court has already certified the Class. ECF No. 123. In considering *final* approval of the Settlement, Federal Rule 23(e)(2) provides that the Court consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the

class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[4] Los Angeles respectfully submits that, because these factors are satisfied here, final approval of the Settlement is "likely" and preliminary approval is appropriate.

### A.      Los Angeles And Lead Counsel Adequately Represented The Class

In weighing approval, courts consider whether "the class representatives and class counsel have adequately represented the class," which involves an inquiry into any conflicts between Los Angeles and the Class and the ability of Los Angeles and Lead Counsel to conduct the litigation. Fed. R. Civ. P. 23(e)(2)(A); *see also Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002) ("Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"); *Cotte v. CVI SGP Acquisition Trust*, 2023 WL 1472428, at *7 (D. Utah Feb. 2, 2023) (noting that courts have "analyzed the adequacy of representation [under Rule 23(e)(2)(A)] by evaluating adequacy under Rule 23(a)(4)").

---

[4] In connection with final approval, the Court will also be asked to consider the Tenth Circuit's long-standing approval factors, many of which overlap with the Rule 23(e)(2) factors: "(1) whether the proposed Settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the Settlement is fair and reasonable." *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002); *see also* Fed. R. Civ. P. 23(e)(2) advisory committee note to 2018 amendment (noting that the Rule 23(e)(2) factors are not intended to "displace" any factor previously adopted by the Court of Appeals). These factors are, likewise, satisfied here.

Here, as this Court already determined when it certified the Class, there is no antagonism or conflict between Los Angeles and the Class. Los Angeles, like the other Class Members, purchased share of Myriad common stock during the Class Period, and was injured by the same alleged misstatements. *Martinez v. Reams*, 2020 WL 7319081, at *6 (D. Colo. Dec. 11, 2020) (finding adequate representation where "there is nothing in the record or proposed settlement agreement that raises obvious concerns regarding interclass conflicts").

Moreover, Los Angeles and Lead Counsel, along with the Los Angeles City Attorney, have vigorously represented the Class both by prosecuting the Action since its inception (as set forth herein) and by negotiating a favorable $77.5 million Settlement. Lead Counsel also note that they are well qualified and highly experienced in securities class action litigation and have successfully prosecuted hundreds of securities class actions. *See, e.g., In re WorldCom, Inc. Sec. Litig.*, 2004 WL 2591402, at *18 (S.D.N.Y. Nov. 12, 2004) ("The quality of the representation given by Lead Counsel [including Bernstein Litowitz] is unsurpassed in this Court's experience with plaintiffs' counsel in securities litigation"); *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 255 (E.D. Va. 2009) ("[W]hen Class Counsel [including Bernstein Litowitz] are 'nationally recognized members of the securities litigation bar,' it is entirely warranted for this Court to pay heed to their judgment in approving, negotiating, and entering into a putative settlement.").

## B.     The Settlement Was Reached Through Arm's-Length Negotiations

The Settlement here is the product of fair, honest, and vigorous negotiations between experienced and informed counsel under the supervision of *two* highly experienced mediators. As discussed above, settlement negotiations were supervised by both Judge Layn Phillips and Michelle Yoshida. Judge Phillips is a former Federal District Court Judge who has mediated some

of the largest, most complex securities cases in history. Ms. Yoshida likewise has nearly two decades of experience as a mediator and special master, and has mediated numerous complex securities class actions. Courts in this Circuit and elsewhere have held that the involvement of an experienced mediator strongly supports the fairness of a proposed settlement, and that Judge Phillips in particular possesses considerable expertise in mediating complex cases such as this one. *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 679, 690 (D. Colo. 2014) (citing the parties' mediation before "retired United States District Judge Layn R. Phillips, who has extensive experience mediating complex cases" in support of preliminary approval of a proposed settlement); *In re Molycorp, Inc. Sec. Litig.*, 2017 WL 4333997, at *7 (D. Colo. Feb. 15, 2017) (same); *see also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 7625708, at *1 (S.D.N.Y. Dec. 21, 2016) (characterizing Judge Phillips as a "renowned" mediator); *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 840 (E.D. Va. 2016) (noting that Judge Phillips "has extensive experience in mediating securities fraud settlement negotiations"). As also noted above, the Settlement is the product of a joint mediators' proposal, which is further evidence of the arm's-length nature of the settlement negotiations. *Gradie v. C.R England, Inc.*, 2020 WL 6827783, at * 10 (D. Utah Nov. 20, 2020).

At the time the Settlement was reached, Los Angeles and Lead Counsel were knowledgeable about the strengths and weaknesses of the case, having intensely litigated this Action for almost four years. Indeed, Los Angeles achieved this Settlement only after, among other things, (i) conducting an extensive pre-suit investigation that included a detailed review and analysis of the voluminous public record and interviews of several former Myriad employees; (ii) preparing and filing a detailed 143-page amended Complaint; (iii) successfully opposing

Defendants' motion to dismiss the Complaint; (iv) obtaining certification of the Class through a contested class certification motion; (v) conducting robust discovery, including obtaining and reviewing over 1.7 million pages of documents produced by Defendants and non-parties, and deposing 22 fact witnesses, including Myriad's top executives and scientists, as well as key third-parties; and (vi) extensively consulting with prominent experts in the fields of psychiatry, pharmacogenomics, statistics, financial economics, and accounting, including obtaining expert reports from these individuals outlining their expected trial testimony.

In addition, Lead Counsel, a nationwide leader in securities class actions that has a thorough understanding of the factual and legal issues in the Action, supports the Settlement. Courts have consistently given "'great weight' . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998); *see also O'Dowd*, 2019 WL 4279123, at *14 ("the recommendation of a settlement by experienced plaintiff[s'] counsel is entitled to great weight."). Moreover, Los Angeles—an experienced, sophisticated institutional investor—has endorsed the Settlement. *See In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) ("[U]nder the PSLRA, a settlement reached . . . under the supervision and with the endorsement of a sophisticated institutional investor . . . is 'entitled to an even greater presumption of reasonableness . . . . Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement.'") (citation omitted).

The fact that the Settlement is the product of an arm's-length negotiation overseen by an experienced mediator, has been approved by a sophisticated lead plaintiff appointed pursuant to the PSLRA, with guidance and input from experienced and informed counsel, demonstrates that

the process by which the Settlement was reached is procedurally fair. It is, therefore, presumptively

fair, reasonable, and adequate.

### C.     The Settlement's Terms Are Adequate And Equitable

Rules 23(e)(2)(C) and 23(e)(2)(D) direct the Court to evaluate whether "the relief provided

for the class is adequate" and "the proposal treats class members equitably relative to each other."

Fed. R. Civ. P. 23(e)(2)(C)-(D). The Settlement satisfies all four of the factors courts consider

when assessing adequacy of relief, and it also treats members equitably vis-à-vis each other.

### 1.     The Settlement Provides Substantial Relief, Especially In Light Of The Costs, Risks, And Delay Of Further Litigation

In assessing the Settlement, the Court should balance the benefits of the certain recovery

for the Class against the risks of continued litigation. *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 694

(D. Colo. 2006). As discussed above, the proposed Settlement—$77.5 million in total Settlement

value—represents the largest securities class action recovery ever achieved in Utah and is among

the top ten such recoveries in the history of the Tenth Circuit. This is an excellent result for Class

Members, especially considering the significant risks of continued litigation.

Although Los Angeles and Lead Counsel believe that the claims asserted against

Defendants have merit, they recognize the substantial risks that the Class could recover far less (or

even nothing) if litigation were to continue to trial. As discussed above, Myriad is a "small cap"

life sciences company that has reported either negative operating cash flow or a net loss in every

quarter during the last four years, operating at a combined loss of over $700 million. Myriad's

operating costs are, and have been, substantial, and the Company has recently relied on asset sales

to fund its operations. Accordingly, Myriad's ability to pay a judgment or fund a settlement in

excess of the Settlement in the event litigation continued for months, or even years, is, at best, highly uncertain.

Additionally, Los Angeles recognized that there were substantial risks to proving Defendants' liability, including the required elements of falsity, scienter, loss causation, and damages.

As to falsity and scienter, Defendants had asserted, and would continue to assert, that their statements concerning the efficacy of GeneSight's ADHD Panel or the results of the GUIDED trial were not false or, even if false, they were not made recklessly. Defendants argued, for instance, that Myriad accurately reported the results of the GUIDED trial, and that their statements about GeneSight's benefit were statements of scientific judgment and opinion and were supported by available empirical research. In addition, Defendants argued that, contrary to Los Angeles's claims that Defendants hid negative results from the GUIDED study, Myriad disclosed the study's endpoints and key results, including that GUIDED had failed its primary endpoint; as such, Defendants argued Myriad had no duty to disclose to investors exactly how many other endpoints in the study failed. Further, Defendants argued that these defenses were borne out by the fact that GeneSight, including the ADHD Panel, is currently on the market and the FDA has not taken steps to remove it. While Los Angeles believes it had meritorious responses to these arguments, it recognizes that these issues are technical and complex, and involve questions of scientific judgment that are difficult to establish at trial.

Los Angeles also faced challenges in proving falsity and scienter with respect to its allegations that Defendants materially overstated Myriad's revenue attributable to its hereditary cancer tests ("HCT"). Defendants argued, and would continue to argue, that these statements

reasonably applied accounting rules to matters of judgment, like revenue accrual, and were found to be reasonable by the Company's outside auditor. These issues, like many of the other matters in dispute, would be the subject of dueling expert opinions at summary judgment and trial.

Los Angeles faced additional risks associated with proving loss causation, as Defendants would continue to argue that none of the stock price declines on the alleged corrective disclosure dates could be connected to the fraud alleged in the Complaint. For instance, at the class certification stage, Defendants challenged Los Angeles's allegations that Myriad's February 2020 announcement of CEO Capone's departure from Myriad partially cured Defendants' alleged fraud, arguing that the disclosure did not reveal any new information alleged to have been concealed from investors. While the Court rejected this argument at the time and on the record before it, Defendants would have continued to vigorously contest loss causation on this date and, if successful, would have significantly limited recoverable damages in the case.

The Complaint also alleged that the FDA's October 31, 2018 Safety Communication, which raised concerns regarding the safety of pharmacogenomic tests, partially cured Defendants' fraud. Defendants would have continued to challenge this allegation on the ground that the disclosure did not mention or relate specifically to GeneSight. Defendants had also advanced additional arguments relating to the remaining disclosure dates, including that none of them revealed any new facts that were not already publicly known. Any of these challenges, if successful, would have limited recoverable damages for the Class or even eliminated damages entirely.

On all of these issues, Los Angeles would have to prevail at several stages—at summary judgment and at trial, and if it prevailed on those, on the appeals that would likely follow—which

could take years. The Settlement avoids these risks and provides a prompt and certain benefit to the Class.

Through the Settlement, investors will recover a highly significant amount, and far greater than in most securities class actions. Cornerstone Research estimates that the median securities class action settlement amount was 5% of estimated damages for the years 2013 through 2022. *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2022 Review and Analysis*, at 6, fig. 5 (Cornerstone Research 2023). Los Angeles's damages expert estimates that the maximum damages in this case—if investors were to prevail on all aspects of their claims and all corrective disclosures at trial, intra-class period gains were offset, and standard accounting methodologies applied—is approximately $450.4 million. If Defendants' loss causation arguments prevailed *just* with regard to the disclosure date they challenged at the class certification stage, maximum recoverable damages would be as much as halved, even if the jury found for Los Angeles on every aspect of all remaining disclosure dates. Thus, the $77.5 million total Settlement value represents approximately 17% of the Class's estimated damages, aggressively assuming that investors prevailed on all of the alleged misstatements during the entire Class Period—more than *three times* the national median recovery. The Settlement represents approximately 34% of the Class's damages if Defendants prevailed on just the disclosure date they had already challenged— more than *six times* the national median recovery. Accordingly, the Settlement represents an excellent recovery for Class Members, especially considering the real risk of no-or-lesser recovery and the typical level of recovery in securities class actions. *See, e.g., In re Giant Interactive Grp., Inc.*, 279 F.R.D. 151, 162-63 (S.D.N.Y. 2011) (finding 16.5% recovery to be "in excess of the average percentage of recovery in many securities actions" as "the average . . . ranges from 3% to

7% of the class's total estimated losses"); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) ("The [$40.3 million] settlement . . . represents a recovery of approximately 6.25% of estimated damages. This is at the higher end of the range of reasonableness of recovery in class actions securities litigations.").

### 2.      Other Factors Established By Rule 23(e)(2)(C) Support Approval

Rule 23(e)(2)(C) also instructs courts to consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; "the terms of any proposed award of attorney's fees, including timing of payment"; and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors supports preliminary approval here.

First, the procedures for processing Class Members' claims and distributing the proceeds of the Settlement to eligible claimants are well-established, effective methods widely used in securities class action litigation. The Settlement proceeds will be distributed to Class Members who submit eligible Claim Forms with required documentation to A.B. Data, Ltd. ("A.B. Data").[5] A.B. Data will review and process the Claims, will provide Claimants with an opportunity to cure any deficiencies in their Claims or request the Court's review, and will then mail or wire eligible Claimants their pro rata share of the Net Settlement Fund (as calculated under the Plan of

---

[5] A.B. Data is a well-known claims administrator with substantial experience in administering class action securities fraud settlements. *See, e.g., Hampton v. Aqua Metals, Inc.*, 2021 WL 4553578, at *11 (N.D. Cal. Oct. 5, 2021) ("[t]he Court finds that A.B. Data has extensive experience implementing notification and claims administration programs in class actions"). The Court already approved A.B. Data to serve as Notice Administrator for the Class Notice in this Action, which it has done since then. ECF No. 131, ¶ 3.

Allocation) upon the Court's approval. This is the standard method in securities class actions and has long been found effective. *See, e.g.*, Stipulation and Agreement of Settlement at 22-29, *In re Vivint Solar, Inc. Sec. Litig.*, Case No. 2:20-cv-919 (JNP)(CMR) (D. Utah Nov. 10, 2021), ECF No. 87-2; Stipulation and Agreement of Settlement at 21-26, *In Re Nu Skin Enterprises, Inc., Sec. Litig.*, Case No. 2:14-cv-00033-JNP-BCW (D. Utah May 20, 2016), ECF No. 134-1.

Second, the Settlement's relief for the Class is also adequate when accounting for the proposed attorneys' fees to be paid upon award by the Court.[6] The Notice provides that Lead Counsel will apply for an award of attorneys' fees in an amount not to exceed 19% of the Settlement Fund, plus payment of Litigation Expenses (including a requested PSLRA award to Los Angeles) in an amount not to exceed $1,700,000. A proposed attorneys' fee of up to 19% is reasonable in light of the work performed by Plaintiff's Counsel, and is well within the range of percentage fees that are regularly awarded in securities class actions and other class actions in this Circuit. *See, e.g., Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, 2010 WL 5387559, at *5 (D. Colo. Dec. 22, 2010) ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class"); *In re Thornburg Mortg., Inc.*, 912 F. Supp. 2d 1178, 1257 (D.N.M. 2012) ("Fees in the range of 30-40%

---

[6] By granting preliminary approval, the Court does not in any way pass upon the reasonableness of any subsequent fee or expense application, which will be decided at the Settlement Hearing. Lead Counsel's fee and expense application will be fully briefed and justified upon filing of a formal motion pursuant to the schedule set by the Preliminary Approval Order. Lead Counsel's fee and expense application will posted on the case website, www.MyriadGeneticsSecuritiesLitigation.com, where Class Members can review the motion papers, and Class Members will have an opportunity to file any objections to the fee request before the Settlement Hearing, where the Court will decide what that fee should be.

of any amount recovered are common in complex and other cases taken on a contingency fee basis.").

Lastly, Rule 23 asks the Court to consider the fairness of the proposed settlement in light of any agreements required to be identified under Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(2)(C)(iv). In addition to the Stipulation (which subsumes and supersedes the Term Sheet), the only other agreement entered into by the Parties regarding the Settlement is a confidential Supplemental Agreement regarding requests for exclusion, or opt-outs, from the Class. *See* Stipulation ¶ 42(b).[7] This agreement provides that, only if the Court allows a second opportunity to opt-out, Myriad will have the right to terminate the Settlement if timely and valid opt-outs exceed the threshold set in the Supplemental Agreement. However, as set forth in Section IV.B. (*infra*), there is no reason for the Court to order a second opportunity for Class Members to exclude themselves from the Class as they already had ample opportunity to do so in connection with the Class Notice. The Supplemental Agreement will be null and void if the Court does not order a second opt-out opportunity. These are the only agreements between the Parties relevant to the Settlement.

### D.   The Settlement Treats Class Members Equitably Relative to Each Other

Rules 23(e)(2)(D) direct the Court to evaluate whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, too, the Court can readily find the Settlement will earn approval. The proposed Plan of Allocation (the "Plan," set forth in full in

---

[7] As is customary and standard in securities class actions, the Supplemental Agreement is not made public to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging the threshold to extract individual settlements. At the Court's request, it will be filed *in camera*.

Appendix A to the Notice) treats Class Members "equitably relative to each other" based on their transactions in Myriad common stock.

The Plan of Allocation is consistent with plans of allocation regularly approved by courts in securities class actions. *See, e.g.*, *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *14 (S.D.N.Y. July 21, 2020) (approving similar plan of allocation). The Plan provides for distribution of the Net Settlement Fund to Class Members demonstrating a loss on their transactions in Myriad common stock. The formula to apportion the Net Settlement Fund among Class Members is based on the estimated amount of artificial price inflation in Myriad common stock during the Class Period that was allegedly caused by Defendants' misconduct. Once the Claims Administrator has processed all submitted claims it will make distributions to eligible Class Members, until additional re-distributions are no longer cost effective. At such time, any remaining balance will be contributed to a non-sectarian, not-for-profit, 501(c)(3) organization approved by the Court.

## IV. THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE CLASS

### A.     Proposed Notice Procedures

Los Angeles respectfully submits that the Court should approve the form and content of the proposed Settlement Notice and Summary Settlement Notice. *See* Stipulation, Exs. A-1 and A-3. The Settlement Notice is written in plain language and clearly sets out the relevant information and answers to most questions that Class Members will have. Consistent with Rule 23(e), the Settlement Notice apprises Class Members of the terms of the Settlement and the options available to them. The Settlement Notice also satisfies the requirements imposed by the PSLRA, *see* 15 U.S.C. § 78u-4, in that it, *inter alia*, states the amount of the Settlement on an absolute and per-security basis; states

the maximum amount of attorneys' fees and Litigation Expenses that Lead Counsel will seek; provides the names, address, and telephone number of Lead Counsel who will be available to answer questions from Class Members; and provides a brief statement explaining the reasons why the Parties are proposing the Settlement. *Id*. The Settlement Notice will also disclose the date, time, and location of the Settlement Hearing and the procedures and deadlines for the submission of Claim Forms, and objections to any aspect of the Settlement, the Plan of Allocation, and/or the requested attorneys' fees and expenses.

The proposed method for disseminating notice, which is set forth in the Preliminary Approval Order submitted herewith, also readily meets the standards under the Federal Rules and due process. Federal Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound" by a proposed settlement. Fed. R. Civ. P. 23(e)(1).

If this Motion is granted, A.B. Data will mail the Settlement Notice and Claim Form (the "Settlement Notice Packet") to all identified potential Class Members. A.B. Data will also cause the Summary Settlement Notice, which summarizes the nature of the Action and the proposed Settlement and explains how to obtain the more detailed Notice, to be published once in the *Wall Street Journal* and transmitted once over the *PR Newswire*, a national wire service, and will publish the Settlement Notice Packet on the case website, www.MyriadGeneticsSecuritiesLitigation.com.

The proposed plan for providing notice is the same method used in numerous other securities class actions, including for the Class Notice in this Action. ECF No. 131. Courts routinely find that comparable notice programs represent the best notice practicable in the circumstances and satisfy the requirements of due process and Rule 23. *See, e.g.*, *In Re Nu Skin*

*Enterprises, Inc., Sec. Litig.*, 2016 WL 6916485, at *3-4 (D. Utah May 24, 2016). The proposed notice procedures should be approved.

**B.      The Court Should Not Require A Second Opt-Out Period**

On December 13, 2021, the Court certified the Class (ECF No. 123) and, thereafter, approved the proposed form and manner for providing notice of the pendency of the Action as a class action to potential Class Members—*i.e.,* the Class Notice. ECF No. 131. Beginning in March 202, the Class Notice was disseminated to potential Class Members to inform them of the pendency of the Action as well as their right to request exclusion from the Class and the procedures for doing so. *See* ECF No. 140, at ¶¶ 3-9 and Exs. A-C. The Class Notice advised recipients that it was within the Court's discretion to allow a second opt-out opportunity, which was not guaranteed, and that the Class Notice may be Class Members' "only chance to opt out of the lawsuit." *E.g.,* ECF No. 140-1, at ¶ 5 ("It is within the Court's discretion whether to allow a second opportunity to request exclusion from the Class if the Action is resolved by a settlement or judgment. In other words, this may be your only chance to opt out of the lawsuit."). The Class Notice also made clear that any Class Members who did not request exclusion would "bound by any settlement or judgment in this Action," including "unfavorable judgment which may be rendered in favor of Defendants." *Id.* As reported by A.B. Data, over 83,000 copies of the Class Notice were mailed to potential Class Members and 30 requests for exclusion were received in connection with that notice. ECF No. 140, ¶¶ 8, 12.

Given the extensive notice program already undertaken and the ample opportunity provided to Class Members to opt-out, the Parties respectfully submit that a second opportunity to opt out need not be provided. The decision whether to grant a second opt-out period pursuant to

Rule 23(e)(4) is "confided to the [district] court's discretion," and courts are "under no obligation" to do so. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 271 (2d Cir. 2006) (affirming decision to not provide a second opt-out period); *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1121 (9th Cir. 2018) ("[There is] no authority of any kind suggesting that due process requires that members of a Rule 23(b)(3) class be given a second chance to opt out.") (quoting *Officers for Justice v. Civ. Serv. Comm'n of the City & Cty of San Francisco*, 688 F.2d 615, 635 (9th Cir. 1982)).

Courts frequently find an additional opt-out period unnecessary where, as here, class members were already given ample opportunity to opt out following class certification and will receive notification of the settlement and the opportunity to object at a formal fairness hearing. *E.g.*, *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1310 (S.D. Cal. 2017) (rejecting all of objector's arguments as to why a second opt-out period at settlement should be granted), *aff'd*, 881 F.3d 1111 (9th Cir. 2018); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 342 (S.D.N.Y. 2005) (holding there was "no reason . . . to permit a second opportunity to opt out" because class members received full opportunity to opt out following class certification and to object to settlement at fairness hearing).

As noted above, the Class were fully informed of the nature of this litigation and the right to opt-out in connection with the Court-approved Class Notice. Moreover, the only new developments that have occurred since Class Members made a decision about whether to opt out—namely, continued litigation that culminated in a substantial recovery—provide a clear

benefit to the Class and negate any potential prejudice from not allowing a second opt-out. Accordingly, the Court should not require a second opt-out period.[8]

## V.      PROPOSED SCHEDULE OF SETTLEMENT EVENTS

The Parties respectfully request that the Court order the schedule proposed *supra* at 3-4, which schedules the Settlement Hearing for 100 calendar days after entry of the Preliminary Approval Order—in order to accommodate the 100-day period required by CAFA—or at the Court's earliest convenience thereafter.

## VI.     CONCLUSION

For the forgoing reasons, Los Angeles respectfully requests that the Courts (i) preliminarily approve the proposed Settlement; (ii) approve the proposed form and manner of notice to putative Class Members; and (iii) schedule a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters.

Dated: August 3, 2023                    Respectfully submitted,

                                         /s/ Abe Alexander
                                         Salvatore Graziano (admitted *pro hac vice*)
                                         Hannah Ross (admitted *pro hac vice*)
                                         Adam Wierzbowski (admitted *pro hac vice*)
                                         Abe Alexander (admitted *pro hac vice*)
                                         **BERNSTEIN LITOWITZ BERGER
                                         & GROSSMANN LLP**
                                         1251 Avenue of the Americas
                                         New York, NY 10020
                                         Telephone: (212) 554-1400

---

[8] While the Parties respectfully submit that a second opt-out is unnecessary, the proposed Settlement is not contingent on that approach. On the contrary, if the Court decides to allow a second opt-out period, the proposed Settlement will proceed. The Parties would need only to submit revised versions of the Preliminary Approval Order, Settlement Notice, and Summary Settlement Notice that include a second opt-out period.

Facsimile: (212) 554-1444
salvatore@blbglaw.com
hannah@blbglaw.com
adam@blbglaw.com
abe.alexander@blbglaw.com

*Counsel for Lead Plaintiff Los Angeles*
*Fire and Police Pensions and*
*Lead Counsel for the Class*

**DEISS LAW PC**
Andrew G. Deiss, USB #7184
Brenda E. Weinberg, USB #16187
Corey D. Riley, USB #16935
10 West 100 South, Suite 425
Salt Lake City, Utah 84101
Telephone: (801) 433-0226
Facsimile: (801) 386-9894 adeiss@deisslaw.com
bweinberg@deisslaw.com criley@deisslaw.com

*Liaison Counsel for Lead Plaintiff*
*Los Angeles Fire and Police Pensions*
*and Liaison Counsel for the Class*

**OFFICE OF THE LOS ANGELES**
  **CITY ATTORNEY**

Hydee Feldstein Soto, Los Angeles City Attorney
Anya J. Freedman, Assistant City Attorney
Miguel G. Bahamon, Deputy City Attorney
Public Pensions General Counsel Division
977 North Broadway
Los Angeles, CA 90012-1728
Telephone: (213) 978-6800

*Additional Counsel for Lead Plaintiff*
*Los Angeles Fire and Police Pensions*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on the 3rd of August, 2023, I caused to be served a true and correct copy of the foregoing **LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND AUTHORIZATION TO PROVIDE NOTICE OF SETTLEMENT, AND MEMORANDUM OF LAW IN SUPPORT THEREOF**, with the Clerk of the Court using the CM/ECF systems that will send an electronic notification to all counsel of record.

*/s/ Abe Alexander*
Abe Alexander